

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 7, 2015**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MARTHA JANE FRANCIS, | § | CASE NO. 14-42974-RFN-13 |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION

### A. Introduction

The debtor in this case is a "chapter 20" filer. The debtor initially filed a chapter 7. In that case, she failed to reaffirm a debt secured by her truck or to redeem the truck. After receiving a discharge, the debtor filed for chapter 13. In her plan, the debtor proposes to pay the debt secured by the truck over a period of 37 months. The lender objects to confirmation of the plan and seeks relief from the automatic stay to exercise its rights against the truck. It contends that the debtor has only one option in this case and that is to surrender the truck. For the reasons set forth in this

opinion, the court will overrule the objection, confirm the debtor's plan and deny the lender's motion for relief from stay.

### B. Factual and Procedural Background

On December 13, 2013, debtor Martha Jane Francis borrowed $5,921.55 from VIP Finance of Texas, Inc. The debtor pledged her truck as collateral for the loan. The loan was not a purchase money loan, but a "title loan." Pursuant to the note executed by the debtor, she was to repay the note over eleven months at six percent interest.

Seven days after signing the note, the debtor filed for bankruptcy under chapter 7. While in chapter 7, the debtor made no payments to VIP. Additionally, she did not reaffirm the debt, redeem the collateral, or surrender the truck to VIP. The debtor received her chapter 7 discharge on April 11, 2014, and her case was closed six days later.

On July 25, 2014, the debtor filed this chapter 13 case. The debtor sought and received an extension of the automatic stay pursuant to section 362(c)(3). Under her plan, the debtor proposes to pay three debts over a period of thirty-seven months. Those debts include arrearages on her home mortgage, her chapter 13 attorney's fee, and the debt to VIP. According to the plan, the debtor will pay VIP's claim at four percent interest from months six to thirty-seven.

After the debtor filed her chapter 13 petition, VIP sought relief from the automatic stay. It followed that motion with an objection to confirmation of the debtor's plan. VIP's motion for relief from stay and objection to confirmation are based upon the same arguments.

First, VIP argues that it is improper for the debtor to include its claim in her chapter 13 case because her personal liability on the debt was discharged in her chapter 7 case. In essence, VIP argues that the extinguishment of the debtor's personal liability leaves no debt to repay through the chapter 13 plan.

2

Second, VIP argues that the Bankruptcy Code specifically prohibits the debtor from retaining the truck in her chapter 13 case. Relying upon sections 521(a)(2) and (a)(6) of the Bankruptcy Code, VIP argues that if a debtor fails to timely reaffirm a debt on personal property or redeem that property, she may "not retain possession" of that property. 11 U.S.C. § 521(a)(6). So, according to VIP, the discharge of the debtor's personal liability, coupled with the requirement that she surrender the truck, compels the conclusion that the debtor has no option in her chapter 13 case but to surrender the truck.

### C. Legal Analysis

1. *Johnson v. Home State Bank*.

VIP's first argument was addressed by the Supreme Court in *Johnson v. Home State Bank*, 501 U.S. 78 (1991). In that case, the debtor filed a chapter 7 case, but did not reaffirm a debt secured by the family farm or redeem the farm. The debtor received a chapter 7 discharge. After lengthy litigation in state courts over the foreclosure of the farm, the debtor filed a chapter 13 case and proposed to pay the claim secured by the farm through his plan. The bankruptcy court confirmed the plan over the lender's objection. The lender appealed, arguing that it was improper to use chapter 13 to pay a secured debt on which the debtor's personal liability had been discharged. The district court and the court of appeals agreed with the lender, holding that after the chapter 7 discharge the lender had no claim against the debtor that could be restructured in chapter 13. *In re Johnson*, 96 B.R. 326 (D. Kan. 1989); *In re Johnson*, 904 F.2d 563 (10th Cir. 1990).

On appeal, the Supreme Court reversed. The Court began its analysis with section 101(5), which defines a "claim" as a "right to payment" or a "right to an equitable remedy." According to the Court, even though the debtor's personal liability on the debt may have been discharged in the

3

prior bankruptcy case, the lienholder still had a "right to payment" in the form of its right to be paid from the proceeds of its collateral. 501 U.S. at 84. Moreover, the lender also had a "right to an equitable remedy" because the debtor was in default on the underlying obligation. *Id.* Consequently, the Court held that while the chapter 7 discharge extinguished the lienholder's ability to seek *in personam* relief against the debtor, its right to *in rem* relief remained intact, thus giving the lienholder a claim in the debtor's chapter 13 case. *Id.*

The Court also addressed the lender's argument that the filing of a chapter 13 after a chapter 7 was improper *per se*. Noting that Congress had expressly prohibited various forms of serial filings elsewhere in the Bankruptcy Code, the Court viewed the absence of a provision barring the serial filing of cases under chapter 7 and chapter 13 as evidence of Congress's intent not to foreclose that possibility. *Id.* at 87. Thus, such filings (known then and today as chapter 20) were not improper *per se*.

The Court did not specifically address the second argument made by VIP in this case; that is, whether section 521 of the Bankruptcy Code precludes a chapter 13 debtor from retaining property that was not redeemed or whose debt was not reaffirmed in a prior chapter 7 case. When *Johnson v. Home State Bank* was decided, section 521(2) required a chapter 7 debtor to file a statement regarding his intent to retain or surrender secured property, and if he intended to retain it, to state whether he intended to reaffirm or redeem. 11 U.S.C. § 521(2)(renamed 521(a)(2) in 2005 by Pub. L. 109-8 § 106(d)(1)). It also required the debtor to "perform his intention with respect to such property," within a certain time. The debtor's failure to reaffirm the debt on the farm was important to the lower courts in *Johnson v. Home State Bank.* The district court found it "significant that the debtor had an opportunity to negotiate a reaffirmation of the discharged debt during the chapter 7 proceeding, but failed to do so." 96 B.R. at 330. And, both the district court

4

and the court of appeals rejected the notion that a debtor who had failed to reaffirm in chapter 7 could force a "unilateral reaffirmation" in a subsequent chapter 13. *Id.;* 904 F.2d at 566. It was in light of these concerns about "unilateral reaffirmation" that the Supreme Court held that chapter 20 cases are not improper *per se*. So, even though the Court did not discuss the debtor's failure to reaffirm under section 521, it most certainly was aware of it.

By itself, *Johnson v. Home State Bank* suggests that the debtor here is entitled to do what she proposes to do in her plan, that is, retain the truck and restructure the debt on it. However, developments after *Johnson v. Home State Bank* have raised questions as to its seemingly dispositive nature.

### 2. *Johnson v. Sun Finance Company*

In *Johnson v. Sun Finance Company (In re Johnson)*, 89 F.3d 249 (5th Cir. 1996), the court addressed the consequence of a chapter 7 debtor's failure to reaffirm or redeem when a chapter 7 case *is not* followed by a filing under chapter 13. In *Johnson v. Sun Finance*, the debtors purchased a camcorder, for which they signed a promissory note and a security agreement. Later, they filed for chapter 7, but expressed no intent to reaffirm or redeem. Refusing to surrender the camcorder to the lender, the debtors argued that section former 521(2) did not limit their rights to only redemption, reaffirmation, or surrender. The court disagreed. It held that section former 521(2) was clear: there were no options available to chapter 7 debtors save and except for those set forth in the section itself. *Id.* at 252.

In *Johnson v. Sun Finance*, the debtors did not argue that they could avoid redemption or reaffirmation as long as they continued to pay for the collateral. Still, in that case the Fifth Circuit effectively laid to rest the notion that chapter 7 debtors could exercise such an option. *See, In re Tequilla Marie Law*, 497 B.R. 843, 850 n. 8 (Bankr. N.D. Tex. 2013)(citing *Johnson v. Sun*

5

*Finance* for the proposition that "ride through" or "pay and drive" has never been recognized in this circuit). So, the first question here is whether *Johnson v. Sun Finance* dictates a different result than *Johnson v. Home State Bank*. This court thinks not.

*Johnson v. Sun Finance* did not involve a chapter 20. As such, the court was not called upon to decide whether section former 521(2) precluded a debtor from restructuring in chapter 13 a debt that had not been reaffirmed in a prior chapter 7. So, in *Johnson v. Sun Finance*, the court did not have to wrestle with *Johnson v. Home State Bank's* central rulings that (1) a secured creditor whose claim has been discharged in a prior chapter 7 still has a claim under section 101(5) of the Bankruptcy Code in a subsequent chapter 13, (2) such a claim can be restructured in chapter 13, and (3) chapter 20 cases are not improper *per se*. Because *Johnson v. Sun Finance* was not called upon to address these issues, it cannot be viewed as being inconsistent with *Johnson v. Home State Bank* (which, since it was decided after *Johnson v. Home State Bank*, it could not be), or as somehow distinguishing that case.

### 3. Section 521(a)(6)

The ruling in *Johnson v. Sun Finance* was codified – at least as it relates to certain obligations secured by personal property – when Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). In section 521(a)(6) of that act, Congress explicitly provided that a chapter 7 debtor may "not retain possession" of personal property if (1) it is "property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property" and (2) the debtor fails to redeem the property or reaffirm the debt. 11 U.S.C. § 521(a)(6). VIP logically argues that because section 521(a)(6) specifically precludes a debtor who fails to timely redeem personal property or

6

reaffirm the debt associated with it from retaining possession of that property, any subsequent filing under chapter 13 is of no avail to the debtor.

Although not framed as such, the question posed by VIP is whether by enacting BAPCPA, Congress effectively overturned the holding in *Johnson v. Home State Bank* when it comes to personal property. Such an analysis starts with the employment of a well-known canon of construction. That is that a court should "not read the Bankruptcy Code to erode past bankruptcy practice absent an indication that Congress intended such a departure." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 563 (1990). That is because courts are to presume that "if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 501 (1986). So, this court must look to various provisions of BAPCPA to see if alone or together they reflect a specific intent to undo *Johnson v. Home State Bank.*

Employing this approach, the court can easily dispose of section 521(a)(6). That section does not help VIP here because it simply does not apply to VIP's collateral. That section only applies when the collateral is "personal property as to which a creditor has an allowed claim for the *purchase price* secured in whole or in part by an interest in such property." 11 U.S.C. § 521(a)(6)(emphasis added). Here, the debtor borrowed money from VIP and pledged her truck as collateral, but she did not use the loan proceeds to purchase the truck. So, by its very terms, section 521(a)(6) does not apply.

4. Sections 521(a)(2) and 362(h)

While section 521(a)(6) does not apply, sections 521(a)(2) and 362(h) do. And, even though they are not as explicit as section 521(a)(6), these provisions suggest that the retention of personal property in the absence of redemption or reaffirmation is not permitted. Section 521(a)(2)

7

requires a debtor "within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, [to] file with the clerk a statement of [her] intention with respect to the retention or surrender of such property." 11 U.S.C. § 521(a)(2)(A). If the debtor intends to retain the property she must state whether she intends to redeem the property or reaffirm the debt secured by the property. *Id.* The debtor must then "perform [her] intention" within 30 days after the 341 meeting. 11 U.S.C. § 521(a)(2)(B).

Section 521(a)(2) does not specify a consequence for the debtor's failure to "perform" her intention. But, section 362(h) does when it comes to personal property. That section provides that if the debtor fails to (1) file timely her statement of intention with respect to personal property or (2) take timely the action specified in the statement of intention, then not only is the stay terminated with respect that property, but it is no longer property of the estate. 11 U.S.C. § 362(h). The question is whether these provisions, alone or together, suggest that Congress intended to overturn *Johnson v. Home State Bank.* Again, this court thinks not.

First, in all respects pertinent to this case, section 521(a)(2) is substantially the same as section 521(2) when *Johnson v. Home State Bank* was decided. Just as current section 521(a)(2)(A) does today, former section 521(2)(A) required the debtor within a certain time to file a statement regarding her intent to retain or surrender and, if electing retention, to specify whether the debtor intended to redeem or reaffirm. And, as section 521(a)(2)(B) does today, former section 521(2)(B) required the debtor to "perform his intention" as set forth in his statement of intention within a certain time. Notwithstanding the debtor's failure to comply with section 521(2) and the lower courts' concern with "unilateral reaffirmation," the Court in *Johnson v. Home State Bank* permitted the debtor to restructure the bank's debt in chapter 13. So, nothing in revised section 521(a)(2) suggests a congressional intent to depart from *Johnson v. Home State Bank*.

8

Current section 362(h) also does not compel a departure from *Johnson v. Home State Bank*. Pursuant to that section, because the debtor failed timely to redeem or reaffirm in chapter 7, not only did the stay lift as to the truck, but the truck ceased to be property of her chapter 7 estate. But, of course, when the debtor filed her current chapter 13 case, a new (albeit temporary) stay came into effect, and the truck became property of this estate under sections 541(a) and 1306(a). 11 U.S.C. § 541(a), 1306(a). Upon this court's extension of the automatic stay pursuant to section 362(c)(3), the debtor's truck had the same status in this case as the debtor's farm in *Johnson v. Home State Bank*. Notably, neither section 521(a) nor 362(h) specifically precludes the restructuring in chapter 13 of a debt that was not reaffirmed in a prior chapter 7. As such, these two sections do not manifest a clear congressional intent to overrule *Johnson v. Home State Bank*.

5. Section 521(d)

Section 521(d), which became part of the Bankruptcy Code with the enactment of BAPCPA, says that if a debtor fails to timely take the action in 362(h), then "nothing in this title shall prevent the operation of a provision in the underlying lease or agreement which has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor." 11 U.S.C. § 521(d). Section 521(d) bolsters the ruling in *Johnson v. Sun Finance* when the agreement in question contains an *ipso facto* clause. It makes clear that in such a case a debtor may not refuse to redeem or reaffirm a debt on personal property and yet retain the property as long as she continues to pay the debt. That is so because once the debtor fails to comply with section 362(h), the *ipso facto* clause places the debtor in default due to the filing of the bankruptcy case. The default, coupled with the lifting of the stay, gives the lender the immediate right to exercise its

state remedies, including repossession. *See In re Sanders*, 2012 Bankr. LEXIS 845, at *13-15 (Bankr. W.D. Tex. 2012).

But, once again, section 521(d) does not assist VIP here. While section 521(d) permits the enforcement of *ipso facto* clauses, it does not supply an *ipso facto* clause itself. *In re Donald*, 343 B.R. 524, 535-36 (Bankr. E.D.N.C. 2006). As such, it only assists the lender when the contract contains an *ipso facto* clause. Here, VIP has no *ipso facto* provision in its contract with the debtor. So, this court need not decide the impact of section 521(d) in this case.

### 6. Section 1328(f)(1)

Finally, the court must consider the impact of section 1328(f)(1), which also became part of the Bankruptcy Code under BAPCPA. Under that section, a court may not grant the debtor a discharge in a chapter 13 if the debtor received a discharge in a chapter 7 case filed during the four-year period preceding the filing of a chapter 13 case. 11 U.S.C. § 1328(f)(1).

Several courts have already considered whether section 1328(f)(1) precludes the filing of a chapter 13 case after the debtor receives a chapter 7 discharge. Relying on the plain language of the statute, those courts have concluded that it does not. *See, e.g.*, *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 283-84 (4th Cir. 2008); *In re Whapshare*, 492 B.R. 211, 214 (Bankr. S.D.N.Y. 2013); *In re Smith*, 469 B.R. 198, 203 (Bankr. S.D.N.Y. 2012). This court agrees. Not only does section 1328(f)(1) not bar chapter 20 filings, it contemplates their occurrence. If anything, section 1328(f)(1) affirmatively negates any congressional intent to prohibit chapter 20 filings.

### 7. The Applicable Provision of BAPCPA Taken as a Whole

Even though no single provision of BAPCPA explicitly precludes chapter 20 filings or the restructuring of debts discharged in a chapter 7 case, the court must still question whether the

provisions discussed above, taken together, manifest a congressional intent to overrule *Johnson v. Home State Bank*. This court does not believe so.

When BAPCPA was enacted, *Johnson v. Home State Bank* had been the law of the land for fourteen years. Congress's awareness of lenders' concerns about chapter 20 filings was made manifest not only by its enactment of section 1328(f)(1), but its addition of section 362(c)(3), which circumscribes the continuation of the automatic stay in certain serially-filed cases. Yet, nowhere in BAPCPA did Congress specifically prohibit chapter 20 filings or the restructuring of debts that were discharged in the initial chapter 7.

As the Supreme Court noted in *Johnson v. Home State Bank*, Congress knows how to preclude serial filings when it chooses to do so. 501 U.S. at 87 (citing 11 U.S.C. §§ 109(g), 727(a)(8), 727(a)(9)). Not only did Congress not put an end to serial filings in BAPCPA, but by enacting such provisions as sections 362(c) and 1328(f)(1), it recognized that they would continue to occur. Had Congress chosen to overrule *Johnson v. Home State Bank*, it would have made that intent clear. Because it failed to do so, this court can only conclude that *Johnson v. Home State Bank* remains viable. And, here, where sections 521(a)(6) and (d) are not called into question, that case governs the outcome. As such, the court will deny the motion to lift stay and confirm the debtor's plan.[1]

### # # # END OF MEMORANDUM OPINION # # #

---

[1] In her plan, the debtor has reduced the interest rate on VIP's claim from six percent to four percent. While VIP did not object to the plan on this basis, VIP will not be paid in full upon the conclusion of the plan. As such, VIP cannot be compelled to release its lien on any remaining balance. *See In re Harrison*, 394 B.R. 879, 881 (Bankr. N.D. Ill. 2008); *In re Lilly*, 378 B.R. 232, 236 (Bankr. C.D. Ill. 2001). So, even though the court will confirm the plan as proposed, the debtor may want to modify her plan to pay VIP's claim in full.